UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

ROSEMARY O'LEARY, individually
and on behalf of JAMES O'LEARY,
her husband,

    Plaintiff,

v.

RYDER TRS, INC., a Delaware
corporation, and FIRST ALLMERICA
FINANCIAL LIFE INSURANCE
COMPANY, a Massachusetts
corporation,

    Defendants.
_____/

CASE NO.: **CIV-MORENO**

MAGISTRATE
BANDSTRA



### COMPLAINT
**(Jury Trial Demanded)**

Plaintiff, ROSEMARY O'LEARY, individually and on behalf of her incapacitated husband, JAMES O'LEARY, sues defendants, RYDER TRS, INC., a Delaware corporation ("Ryder") and FIRST ALLMERICA FINANCIAL LIFE INSURANCE COMPANY, sometimes known as "Allmerica Financial Corporation" ("Allmerica"), and alleges:

### Parties, Jurisdiction, and Venue

1. This is an action by Mrs. O'Leary against her employer, Ryder, and her group health plan administrator, Allmerica, (a) to enforce medical benefits payable for the care of her incapacitated husband (a covered dependent under the Ryder medical plan), under ERISA, and (b) for money damages as a result of misrepresentations regarding the benefits payable under the Ryder plan.

2. Mrs. O'Leary is a citizen and resident of Miami, Florida

and has been at all material times. Her husband, James O'Leary resides with her in Miami, but has been comatose since a tragic auto accident and near-drowning in 1991.

3. Ryder is a Delaware corporation having its principal place of business in Miami, Florida. Ryder's registered headquarters office is in Denver, Colorado, but substantially all of Ryder's employees and business operations are located in Miami.

4. Allmerica is a Massachusetts corporation with offices in Worcester, Massachusetts and Troy, Michigan. Allmerica has conducted substantial, and not isolated, business activities in Florida and has qualified to do business as an insurance company in this State.

5. Jurisdiction exists under (a) 29 U.S.C. §1132 (ERISA) and 28 U.S.C. §1331, as to Mrs. O'Leary's employee medical plan claims, and (b) 28 U.S.C. §1367 as to Mrs. O'Leary's misrepresentation claim.

6. Venue is proper under 28 U.S.C. §1391.

### Allegations Common to Both Counts

7. Mrs. O'Leary began employment with a subsidiary of Ryder Systems in Miami in October, 1988.

8. On the night of December 8, 1991, Jim O'Leary drove his car to pick up dinner for his family. On the drive home alongside a canal, his car left the paved surface and veered into the canal. Mr. O'Leary was underwater for an estimated eight to ten minutes, and has been in a coma ever since. Next week, he will be 64 years

2

old.

9. Other than her time on the job for Ryder, Mrs. O'Leary has spent virtually all of her waking hours -- and many other hours when most people are asleep -- caring for Jim's needs. Though a prior medical insurance administrator said it couldn't be done, Mrs. O'Leary proved that Jim could safely live in the O'Learys' ground-floor condominium unit more cost-effectively than if he received in-patient institutional care. Mrs. O'Leary arranged lowest-cost nursing care from Criticare Home Health Services, Inc., and arranged for the purchase of medical supplies in bulk and at a savings. She bought a hospital bed for the O'Leary home for Jim, and a wheelchair so that she could transport Jim on outdoor walks and to medical appointments.

10. In his home and with excellent care from his wife, children and grandchildren, and the nursing aides, Jim's prognosis has improved over the past six years. He moves his eyes in apparent recognition of persons and photos, and he responds to the touch, though he remains unable to speak.

11. In October, 1996, Ryder Systems' "move management" division was acquired by an investment group known as "Questor Partners Fund, L.P.", based in Southfield, Michigan. Until that acquisition, Ryder Systems had its own plan administered by a different administrator (PruCare). The new investment group formed defendant, Ryder TRS, Inc., to hold the assets purchased from Ryder Systems.

12. Defendant Ryder hired the employees that had worked for

3

the applicable Ryder Systems' affiliate -- including Mrs. O'Leary -- by, among other things, telling them that the new owners would provide a new and improved group health plan.

13. In early 1997, Mrs. O'Leary and other employees of Ryder were provided an "Employee Benefit Plan Summary" for the employees of Ryder describing the previously promised new and improved plan, which was stated to be effective April 1, 1997. That summary showed that the maximum lifetime benefit for any covered employee or dependent was "Unlimited", whether services were provided in-network or out-of-network.

14. Ryder employees, including Mrs. O'Leary, were also furnished in early 1997 with a printed report demonstrating how much better the new "Allmerica Plan" was in comparison to the "Prior Plan." Six specific improvements were shown. One of those improvements was that the prior plan's lifetime maximum of "$1 Million" had been changed to "Unlimited."

15. Mrs. O'Leary relied on these representations and "improvements" by continuing to serve Ryder. Customers of Ryder have consistently cited Mrs. O'Leary for "All-Star Service" on behalf of Ryder, and Ryder has earned substantial revenue on corporate relocations arranged and coordinated by Mrs. O'Leary.

16. In October, 1997, Mrs. O'Leary spoke with two Allmerica representatives and was advised that, under the new Ryder plan, there was no carryover of benefits paid by PruCare under the prior plan. Shortly thereafter, however, Mrs. O'Leary received a letter from Allmerica, dated October 23, 1997 stating that (a) the

$1,000,000 lifetime maximum still applied, and (b) as of September 30, 1997, claims paid were $735,583.44.

17. After making inquiry and reviewing the materials she had been provided, Mrs. O'Leary challenged Allmerica's determination, in writing and through counsel, on January 22, 1998. On April 14, 1998, Ryder advised Mrs. O'Leary that the purported $1,000,000 lifetime maximum benefit, <u>including</u> payments under the prior plan, remained in effect, and that Jim's lifetime maximum payments through March 7, 1998 totaled $847,763.39. Although the parties exchanged further correspondence, Ryder's written response emanated from Ryder's senior management and legal counsel, and constitutes a final determination from which no further meaningful administrative review may be obtained.

18. Mrs. O'Leary asked Ryder and Allmerica to keep her informed so that she might commence a legal action well before benefits were to be stopped. Precipitously, and improperly, Ryder and Allmerica advised Mrs. O'Leary in a letter dated July 27, 1998 (received August 3, 1998) that Jim's benefits had hit $1,000,000 as of June 7, 1998, and that no further benefits would be paid. Ryder and Allmerica did not tell Criticare, which called regularly from June 7th to the present, that no further benefits would be paid, so Criticare continued to provide services (and is now owed over $35,000).

19. Ryder's and Allmerica's prior correspondence indicated that benefits paid had increased $112,179.95 in the five and one-quarter months from September 30, 1997 to March 7, 1998 -- an

5

average of $21,367 per month. That monthly rate is consistent with the actual cost of Jim's treatment.

20. The Ryder/Allmerica letter of July 27, 1998 indicates that $152,236.61 in benefits was paid over the next 3 months (March 7 to June 7, 1998) -- a monthly rate of $50,745.53, which is far in excess of the monthly amounts incurred for Jim's care. Accordingly, that notice is undoubtedly in error.

21. As of today, August 7, 1998, Criticare Home Health Services, Inc. has advised Mrs. O'Leary that it cannot continue to provide nursing care beyond August 11, 1998 if the defendants continue to refuse to pay claims for Jim's care.

## Count I -- ERISA (29 U.S.C. §1132)

22. Mrs. O'Leary realleges paragraphs 1 through 21 above.

23. Ryder and Allmerica have wrongfully refused to pay benefits payable under the plan adopted by Ryder, administered by Allmerica, and communicated by them to Mrs. O'Leary in early 1997. Specifically, no lifetime maximum is applicable. Alternatively, if a $1,000,000 limit was in fact adopted, it is a _new_ limit for a _new_ plan, and Jim's benefits under that new plan have not begun to approach that new limit.

24. As a result of Ryder's and Allmerica's wrongful acts, Mrs. O'Leary has been obligated to retain undersigned counsel.

WHEREFORE, Mrs. O'Leary requests the Court to enter judgment:

(a) compelling Ryder and Allmerica, on an emergency basis, to continue paying medical benefits as promised, during the

COLL DAVIDSON CARTER SMITH SALTER & BARKETT • PROFESSIONAL ASSOCIATION • ATTORNEYS AT LAW • (305) 373-5200

pendency of this action;

(b) finding, determining and enforcing Mrs. O'Leary's rights under the Ryder group medical plan;

(c) awarding attorney's fees and costs in accordance with 29 U.S.C. §1132 to counsel for Mrs. O'Leary; and

(d) granting such other and further relief as may be just.

### Count II -- Negligent Misrepresentation

25. Mrs. O'Leary realleges paragraphs 1 through 21 above.

26. If the "new" Plan is determined not to include such terms, Ryder and Allmerica each misrepresented material facts to Mrs. O'Leary as she made her decision to continue working for the new owners of Ryder:

(a) that the "new" group medical health plan would remove the lifetime medical benefit of $1,000,000; and

(b) subsequently, and alternatively, that a new $1,000,000 limit would apply, exclusive of benefits paid under the plan in place before the 1996 sale.

27. Ryder and Allmerica made such representations under circumstances in which each of them should have known that such representations were false (if the "new" Plan is determined not to include such terms).

28. Mrs. O'Leary relied, justifiably, on the representations regarding the new plan terms as made by Ryder and Allmerica.

29. As a result of the misrepresentations made by Ryder and

7

Allmerica, Mrs. O'Leary has suffered, and will continue to suffer, damages in an amount exceeding $20,000 per month, or more than $1,000,000 over Jim O'Leary's remaining life expectancy.

WHEREFORE, Mrs. O'Leary respectfully requests the Court to enter judgment:

    (a) awarding her money damages in an amount to be determined by the jury;

    (b) awarding costs and interest; and

    (c) granting such other and further relief as may be just.

### Demand for Trial by Jury

Mrs. O'Leary demands trial by jury as to all issues so triable.

    COLL DAVIDSON CARTER SMITH
     SALTER & BARKETT, P.A.
    Attorneys for Plaintiff
    3200 Miami Center
    201 South Biscayne Blvd.
    Miami, Florida 33131-2312
    Ph: (305) 373-5200
    Fax: (305) 374-7296

By: _/s/ Vance E. Salter_
    Vance E. Salter
    Fla. Bar No. 232981

Dated: August 7, 1998

184165

# CIVIL COVER SHEET  98-1896

CIV-MORENO
MAGISTRATE
BANDSTRA

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS
ROSEMARY O'LEARY, individually and on behalf of JAMES O'LEARY, her husband

## DEFENDANTS
RYDER TRS, INC., a Delaware corporation, and FIRST ALLMERICA FINANCIAL LIFE INSURANCE COMPANY, a Massachusetts corporation

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Miami-Dade
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

A: Dade 1:98CV1896/FAM/TGB

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
Vance E. Salter, Esq., Coll, Davidson, et al., 201 S. Biscayne Blvd., Suite 2600, Miami, FL 33131 (305) 373-5200

**ATTORNEYS (IF KNOWN)**

**(d) CIRCLE COUNTY WHERE ACTION AROSE:** Miami-Dade
**DADE**, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN X ONE BOX ONLY)
- ☐ 1. U.S. Government Plaintiff
- ☒ 3. Federal Question (U.S. Government Not a Party)
- ☐ 2. U.S. Government Defendant
- ☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Case Only)
N/A

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION
(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)
(1) 29 U.S.C. § 1132 -- ERISA Group Medical Plan
(2) Pendant negligent misrepresentation claim

**IVa.** 2 days estimated (for both sides) to try entire case

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| A CONTACT | A TORTS | B FORFEITURE PENALTY | A BANKRUPTCY | A OTHER STATUS |
|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 362 Personal Injury-Med Malpractice | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury-Product Liability | **A PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. B |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 630 Liquor Laws | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) B | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 640 R.R. & Truck | ☐ 820 Copyrights |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits B | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending B | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 160 Stockholder's Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 690 Other | **B SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | **A LABOR** | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **B PRISONER PETITIONS** | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 720 Labor Management Relations B | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure B | ☐ 442 Employment | Habeas Corpus | ☐ 730 Labor Management Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | **A FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other * | ☐ 791 Employee Ret. Inc. Security Act B | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights * A or B | | ☐ 871 IRS-Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions * * A or B |

## VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)
- ☒ 1 Original Proceeding
- ☐ 2 Removed From State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Refiled
- ☐ 5 Transferred from another district (Specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23
**DEMAND $**
Check YES only if demanded in complaint:
**JURY DEMAND:** ☒ YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY
(See Instructions):
JUDGE _____  DOCKET NUMBER _____

**DATE** AUGUST 7, 1998

**SIGNATURE OF ATTORNEY OF RECORD** /s/

UNITED STATES DISTRICT COURT
S/F 1-2
REV. 9/94

FOR OFFICE USE ONLY: Receipt No. 696381
Date Paid: 8/7/98
Amount: 150.00
M/ifp: _____